617 So.2d 179 (1993)
Hazel BERGERON, Plaintiff-Appellant,
v.
WAL-MART STORES, INC., et al., Defendants-Appellees.
No. 92-478.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1993.
Writ Denied June 18, 1993.
*180 James Domengeaux, Lafayette, for Hazel Bergeron.
Philip Andre Fontenot, Lafayette, for Wal-Mart Stores, Inc., et al.
Before STOKER, THIBODEAUX and SAUNDERS, JJ.
SAUNDERS, Judge.
On November 9, 1988, Hazel Bergeron, plaintiff and appellant herein, then 66 years old, fell from an access ramp which led from the Wal-Mart Store's main entrance to the parking lot. In the fall, Bergeron severely fractured her left wrist, sustained a bruise above her left eye, and scratched her left knee.
Bergeron brought this action against Wal-Mart Stores, Inc. (Wal-Mart) and its insurer, National Union Fire Insurance Company of Pittsburg, PA (National Union), defendants and appellees. The jury found that Bergeron was injured as a result of a condition of the premises which created an unreasonable risk of injury to Wal-Mart's customers. The jury also found Bergeron 80% comparatively at fault and Wal-Mart 20% at fault in causing the accident. The jury then awarded Bergeron $16,000.00 in past and future medicals, and $4,000.00 for pain, suffering and mental anguish for a total award of $20,000.00.
By this appeal, Bergeron, contends that the jury erred in finding her 80% comparatively negligent and awarding her only $4,000.00 in general damages despite an award of $16,000.00 in medical expenses. Wal-Mart and National Union have neither appealed nor answered the appeal.
We agree with Bergeron's contentions that the jury was unreasonable in finding her 80% comparatively negligent in causing her injuries. Additionally, we find the jury's award of $4,000.00 in general damages inadequate and raise this amount to $30,000.00, the lowest amount which would reasonably compensate Bergeron for her pain and suffering.

MRS. BERGERON'S FAULT
Wal-Mart and National Union have not appealed the jury findings that the access ramp created a defect on the premises which resulted in an unreasonable risk of injury to Wal-Mart's customers and that Bergeron was injured as a direct result of this defect.
Thus, we must determine whether the jury erred in determining that Bergeron was at fault in causing her own injuries.
The evidence revealed that Bergeron had entered Wal-Mart a few moments prior to her injury with her daughter-in-law to purchase some dog food. Her entrance was uneventful as she walked up the center of the ramp without difficulty. Wal-Mart did not have the brand of dog food which they wanted so they exited the store without making any purchases. Bergeron followed her daughter-in-law out of Wal-Mart, looking forward, headed in the direction of her parked car.
The ramp from which Bergeron fell, located at the main entrance of the Wal-Mart Store in Crowley, Louisiana, had been used by Bergeron for several years prior to her injury, without mishap. The ramp had steeply flared sides and was fifteen (15) feet wide at the top where it met the sidewalk, and twelve (12) feet wide at the bottom where it met the parking lot.
Plaintiff's expert in the field of architecture, Fabian Patin, testified that the curbed ramp was in violation of numerous safety standards, including ANSI Standards,[1] Life Safety Code, National Building Code, Standard Building Code, and various architectural industry standards. One specific requirement was that the flared portion of the curb ramp should have been painted with hazard yellow paint to warn patrons of the sloped edge of the ramp. Additionally, the evidence presented at trial established that the flared portion of the access ramp was four times the maximum allowable slope of any of the safety codes.
Wal-Mart is strictly liable for maintaining a defective and unreasonably dangerous *181 ramp on its premises which did not meet any safety standards presented. These safety standards are based upon expertise denoting what constitutes reasonably safe conditions at a place of business. Under the facts presented, we find that a reasonable juror could not have found that Bergeron was 80% comparatively at fault in causing her injuries. Bergeron was an invitee, using the ramp as it was intended to be used, for ingress and egress to the store. The ramp did not have hazard paint or striping applied to the flared side to contrast the main area of the ramp from its deviation. The deviation or downward slope angle was very steep and almost four times the most liberal slope allowed under the various codes. Bergeron had no visual warning, other than the slope itself, that the ramp would suddenly change in elevation.
This court was faced with a similar scenario in Head v. St. Paul Fire & Marine Ins. Co., 408 So.2d 1174 (La.App. 3d Cir.), writ denied, 412 So.2d 99 (La.1982). In Head, an elderly woman was injured as she exited a hospital via the front entranceway. The entranceway sloped downward toward a "rollover" curb, i.e., a sloping concrete walkway which ended at a curb and was covered by a dark-colored mat. The mat obscured the yellow paint on the curb and the curb itself. This court found that the hospital's failure to warn of the existence of the curb and concealing its presence with a dark mat breached its duty of exercising reasonable care for its patrons.
Although the hospital attempted to argue that the plaintiff was contributorily negligent in causing her injuries because she may have been talking to another person as she left the hospital, we rejected this contention and stated as follows:
"The burden of proving contributory negligence is on the defendants and the test is the same as that for proof of negligence, i.e., did the person's conduct fall below the standard to which a person should conform for his own safety and protection; the standard of a reasonable man in like circumstances. Morgan v. Hartford Accident & Indemnity Co., [402 So.2d 640 (La.1981)] supra. We fail to see how the mere fact that a person is talking to another while walking can constitute contributory negligence on the part of the person doing the talking. Certainly, this isn't conduct which falls below the standard to which a reasonable person should conform for his own safety and protection. We find that defendants failed to prove that plaintiff was guilty of contributory negligence."
Head, supra, at page 1180.
We note that the facts in Head, supra, arose prior to legislative enactment of laws allowing comparative fault. Additionally, in Head, the plaintiff was a stranger to the community and the hospital, unlike Mrs. Bergeron.
When an appellate court finds a trial court's assessment of fault too high, it should be reduced to the highest percentage which we would have affirmed as reasonably within the trial court's discretion. See Finley v. North Assur. Co. of America, 476 So.2d 837, 850 (La.App. 2d Cir. 1985) and Carpenter v. Hartford Fire Ins. Co., 537 So.2d 1283, 1288 (La.App. 2d Cir. 1989).
Under our analysis, a finding of 20% comparative fault on the part of Mrs. Bergeron is the highest percentage which we would have affirmed as reasonable within the trial court's discretion.

QUANTUM
Bergeron contends that the jury erred in awarding only $4,000.00 in general damages despite an award of $16,000.00 in past and future medicals. We agree that the jury abused its discretion in its award.
"Before a damage award may be questioned as inadequate or excessive, the appellate court must look to the individual circumstances of the particular case to determine whether the award for the injuries and their effect on the injured person were a clear abuse of the trier of fact's great discretion. Reck v. Stevens, 373 So.2d 498 (La.1979)." *182 Bordelon v. Southern La. Health Care Corp., 467 So.2d 167, 171 (La.App. 3d Cir.), writ denied, 469 So.2d 989 (La.1985).
Bergeron severely fractured her left wrist in the accident. She was seen by Dr. Williams in Church Point, Louisiana, who put her wrist in a cast for three weeks. After removing the cast, Dr. Williams referred Bergeron to Dr. Heard, an orthopedic surgeon, who recommended either a wrist replacement or a wrist fusion due to the improper healing of the fracture. At trial, Bergeron testified that she was not sure whether she would have either the total wrist replacement or the wrist fusion, as recommended by Dr. Heard. She did testify that, if the pain increased too much, she would have to have the surgery.
Although Bergeron had not seen a doctor for two years prior to trial, she testified that she was often in pain and would take Tylenol for relief. She also had problems driving and could not lift or bear down on her wrist due to lack of strength. The testimony revealed that she continued to suffer from post-traumatic arthritis, a deformity of the wrist, and a 25% disability of the arm.
A similar injury was sustained by the plaintiff in Bordelon, supra. In Bordelon, the plaintiff slipped on a hospital ramp and fractured her left wrist, injured her buttocks, back and head. Bordelon had a 12% permanent impairment of the arm as compared to Mrs. Bergeron's 25% permanent impairment of the arm as a whole. In Bordelon, the jury awarded $26,000.00 in general damages and this court found no manifest error in that award.
Based upon the evidence presented and the jurisprudence, we find that $30,000.00 is the lowest award which will reasonably compensate Bergeron for her pain and suffering.

CONCLUSION
For the foregoing reasons, the trial court's judgment finding Hazel Bergeron 80% negligent is hereby amended and reduced to 20%. Additionally, Wal-Mart Stores, Inc. is found to be 80% at fault in causing the accident. Additionally, the jury's award of $4,000.00 in general damages is increased to $30,000.00. The remainder of the trial court's judgment is affirmed.

DECREE
Accordingly, judgment is recast in relevant part, as follows: In favor of plaintiff, Hazel Bergeron, and against defendants, Wal-Mart Stores, Inc. and National Union Fire Insurance Company of Pittsburg, PA, jointly and in solido, in the full sum of FORTY-SIX THOUSAND AND NO/100 ($46,000.00) DOLLARS which includes THIRTY THOUSAND AND NO/100 ($30,000.00) DOLLARS for pain, suffering and mental anguish, plus SIXTEEN THOUSAND AND NO/100 ($16,000.00) DOLLARS for past and future medical expenses, together with legal interest thereon from date of judicial demand until paid, subject to a 20% reduction due to the comparative negligence of Hazel Bergeron.
Costs of this appeal and at trial are to be paid 80% by Wal-Mart Stores, Inc. and National Union Fire Insurance Company of Pittsburg, PA, defendants and appellees, and 20% by Hazel Bergeron, plaintiff and appellant.
AFFIRMED IN PART; AMENDED IN PART; AND RENDERED.
NOTES
[1] The American National Standards Institute (ANSI) specifications are applicable to public facilities constructed after January 1, 1978. LSA-R.S. 40:1731, et seq.